IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

|  |  |
|---|---|
| APRIL ADAMS, *on behalf of* J.L.A.,<br><br>        Plaintiff,<br><br>vs.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>        Defendant. | CASE NO. 1:26-cv-30<br><br>DISTRICT JUDGE<br>BENITA Y. PEARSON<br><br>MAGISTRATE JUDGE<br>JAMES E. GRIMES JR.<br><br>**REPORT &<br>RECOMMENDATION** |

April Adams, on behalf of J.L.A., filed a Complaint against the Commissioner of Social Security seeking judicial review of the Commissioner's decision denying Supplemental Security Income. This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). The Court referred this matter to a Magistrate Judge under Local Rule 72.2(b)(1) for the preparation of a Report and Recommendation. Following review, and for the reasons stated below, I recommend that the District Court affirm the Commissioner's decision.

**Procedural history**

In November 2023, Adams filed an application for Supplemental Security on behalf of her minor child, J.L.A., alleging a disability onset date of November 1, 2021,[1] and claiming that J.L.A. was disabled due to speech delay

---

[1]    "Once a finding of disability is made, the [agency] must determine the onset date of the disability." *McClanahan v. Comm'r of Soc. Sec.*, 193 F. App'x 22, 425 (6th Cir. 2006).

and autism. Tr. 17, 172, 234. The Social Security Administration denied Adams's application at the initial level and on reconsideration. Tr. 52, 61. Adams then requested a hearing before an Administrative Law Judge (ALJ). Tr. 86.

In March 2025, an ALJ held a hearing, at which Adams testified. Tr. 28–51. That month, the ALJ issued a written decision finding that J.L.A was not disabled. Tr. 17–23. The ALJ's decision became final on November 3, 2025, when the Social Security Appeals Council declined further review. Tr. 1–3; *see* 20 C.F.R. § 404.981.

Adams filed this action on behalf of J.L.A. on January 6, 2026. Doc. 1. Adams asserts the following assignment of error:

> The ALJ's decision is unsupported by substantial evidence because the ALJ failed to perform an adequate assessment of whether Plaintiff's autism spectrum disorder meets or medically equals listing 112.10.

Doc. 8, at 5.

### Evidence

*Personal and vocational evidence*

J.L.A. was almost 7 years old on the date Adams filed the application. Tr. 171. At the time of the administrative hearing in November 2025, he was in the second grade. Tr. 35.

*Medical evidence*[2]

J.L.A. was diagnosed with autism spectrum disorder. Tr. 396. At a June 2023 exam at the Center for Developmental Pediatrics, Adams reported that J.L.A. had "done remarkably" during the previous school year. Tr. 396. He scored in the top ten percent in math and his reading comprehension tested at a fourth- or fifth-grade level. Tr. 396. J.L.A.'s peer relationships were "problematic," but he was trying to make friends. Tr 396. During the visit, J.L.A. was hyperactive and impulsive. Tr. 396. The provider discussed getting him into a social skills program. Tr. 396. At an August 2023 follow-up visit, Adams reported having "no present problem" and stated that she "wanted to … check in before school starts." Tr. 396.

At a November 2023 appointment at the Center of Developmental Pediatrics,  Adams reported that J.L.A. could spell at a sixth-grade level but his "[r]eading comprehension [wa]s poor." Tr. 350. J.L.A. "ha[d] a problem with 'gaming'" and he "game[d]" for more than four hours a day. Tr. 350. Adams said that J.L.A. did not understand "personal boundaries." Tr. 350. He had "chronic insomnia" even with Melatonin and the provider discussed starting the medication Clonidine to help with sleep. Tr. 350.

At a December 2023 pediatric appointment, J.L.A. displayed normal affect and a "normal pace of speech." Tr. 376, 379.

---

[2]     This summary of medical evidence is taken from the Commissioner's brief. Adams's brief did not contain a summary of medical evidence.

At a February 2024 appointment at the Center of Developmental Pediatrics, J.L.A. was a little over seven years old. Tr. 350, 356. Adams reported that Clonidine helped J.L.A. fall asleep, but he would wake up four hours later. Tr. 356. The provider increased the Clonidine dosage. Tr. 356. On exam, J.L.A. had intermittent eye contact. Tr. 355. His speech was "100% understandable" and he spoke in sentences. Tr. 355. He had good social reciprocity but didn't understand personal space. Tr. 355. J.L.A. was very impulsive and fidgety, but he displayed no outbursts, aggression, or anxiousness. Tr. 355.

Five days later, J.L.A. had an occupational therapy session. Tr. 348. Adams reported that J.L.A. showed improvement at home with self-regulation skills. Tr. 348–49. The provider wrote that J.L.A. "continue[d] to demonstrate challenges with: fine motor skills, self-care skills, self-regulation skills, and visual-motor [skills]." Tr. 349. During the session, the provider described J.L.A.'s behavior as attentive, impulsive, interactive, and motivated. Tr. 349. He wrote that J.L.A. participated throughout the session. Tr. 348.

In May 2024, J.L.A. saw Jinhui Wang, Psy.D. for a consultative psychological exam. Tr. 494. Adams reported that J.L.A. had behavioral issues, difficulty making friends, "issues with … handwriting," and "meltdowns." Tr. 495. J.L.A. advised that he would be in second grade in the fall. Tr. 495. Adams said that J.L.A. had been on an individualized education plan (IEP). Tr. 495. J.L.A. stated that his grades were very good, and Adams agreed that J.L.A. did

4

"very well." Tr. 495. His teacher spoke highly of J.L.A. and said that J.L.A. was "top tier compared to the rest of the class." Tr. 495. J.L.A. and Adams agreed that J.L.A. didn't always complete his homework on his own, but Adams "make[s] him finish his homework." Tr. 495. J.L.A. got along with his teachers "great" and was "getting better" getting along with his peers. Tr. 495. J.L.A. said that he had "zero" friends in the neighborhood. Tr. 496. On exam, J.L.A. did not display difficulty understanding or remembering simple questions or significant impairment in attention and concentration. Tr. 496. J.L.A. appeared pleasant and cooperative with no signs of anxiety, vigilance, scanning, or fear. Tr. 496.

A February 2025 discharge note from speech and language therapy indicated that J.L.A. met his goals and that his language skills were within the average range. Tr. 505–06. He did not require further speech therapy. Tr. 506.

*Function report*

In a function report, Adams stated that J.L.A.'s ability to communicate was not limited. Tr. 218. J.L.A. had no physical limitations. Tr. 220. His ability to progress in learning was limited, Adams indicated, but he could still read and write to some extent and perform simple arithmetic. Tr. 219. J.L.A. did not have friends his own age, but he could make new friends, generally got along with adults, and generally got along with schoolteachers. Tr. 221. His

5

ability to pay attention and stick with tasks was limited, but he could complete homework and, most of the time, chores. Tr. 223.

*State agency opinions*[3]

On June 11, 2024, Robert Klinger, M.D., reviewed J.L.A.'s record. He considered Listing 112.10,[4] *Autism Spectrum Disorder*, and Listing 102.04, *Loss of Visual Efficiency, or Visual Impairment*. Tr. 56. Dr. Klinger found that J.L.A.'s impairments did not satisfy a listed impairment and that J.L.A. was not disabled. Tr. 56–59.

On August 19, 2024, Dana Schultz, M.D., reviewed J.L.A.'s record and agreed with Dr. Klinger's opinion. Tr. 64–66.

*Hearing testimony*

Adams, who along with J.L.A. was represented by counsel, testified at the telephonic administrative hearing held in March 2025. Tr. 30. Adams

---

[3]     When a claimant applies for disability benefits, the State Agency creates a record. The record includes the claimant's medical evidence. A State Agency disability examiner and a State Agency physician or psychologist review the claimant's record and determine whether and to what extent the claimant's condition affects his or her ability to work. If the State Agency denies the claimant's application, the claimant can ask for reconsideration. On reconsideration, the State Agency updates the record and a second disability examiner and doctor review the file and make a new determination. *See, e.g.*, 20 C.F.R. § 404.1615.

[4]     The "listings" are found at 20 C.F.R Part 404, Subpart P, App. 1. They are a catalog of disabling impairments organized by "body systems." Generally, each body system section has an Introduction, which contains information relevant to that system, and a Category of Impairments, which contains each numbered listing. Each listing describes the objective medical and other findings needed to satisfy the criteria of that listing. *Id.*; 20 C.F.R. § 404.1525.

testified that J.L.A. was diagnosed with autism when he was a little over five years old. Tr. 35. Before then, he was diagnosed with speech and behavior delays, which got him into "school at three, for extended help," and led to his IEP "journey through the school system" and his eventual autism diagnosis. Tr. 35. J.L.A.'s second-grade IEP allows him extended time to complete tasks, such as tying his shoes and getting ready for class, and reminders. Tr. 35. J.L.A. is working this year on self-regulation and social interaction. Tr. 35. Throughout his schooling, J.L.A. has been in an integrated classroom, where children with non-severe disabilities are placed with children without disabilities. Tr. 35.

Adams stated that J.L.A. believes that all the children in his classroom are his friends, but he has had a playdate with only one of his classmates. Tr. 36. Adams agreed that this was one friend that J.L.A. has. Tr. 37. She described difficulties J.L.A. has getting along with children, such as J.L.A.'s predilection for "growling at children, and being a dinosaur when he's at … recess." Tr. 37. When asked if J.L.A. has trouble differentiating between appropriate behavior at home and in public, Adams said that he did. She explained that when they are at the grocery store, J.L.A. is too loud and tells strangers his "full government name" and the "full government name" of his family members. Tr. 37. J.L.A. has trouble expressing his emotions, but he is improving. Tr. 38.

Adams also stated that J.L.A. had some fine motor problems that he was working on in school and with his occupational therapist. Tr. 39. For instance, he doesn't like to hold a pencil, so he only finishes half of his schoolwork. Tr. 39. Some things that he can do in therapy he does not do at home. Tr. 39. When J.L.A. doesn't get something that he wants or fails at a task, he has a meltdown—he "shuts completely down and cries." Tr. 40. Adams has to supervise J.L.A. when he does homework because he'll get distracted after he completes some of his homework. Tr. 40–41.

J.L.A. takes medications that help him sleep. Tr. 42. He can dress himself if his parents lay his clothes out for him. Tr. 43. He doesn't wipe himself when he goes to the bathroom. Tr. 44. J.L.A. washes his hands with no problem, but Adams has to be quick about bathing him—more than five minutes and "he's ready to bolt." Tr. 43–44.

J.L.A. used to have speech therapy but no longer requires it. Tr. 48. He has eye and vision problems for which he wears eyeglasses and attends medical appointments. Tr. 48–49.

**The ALJ's Decision**

The ALJ made the following findings of fact and conclusions of law:

> 1. The claimant was … a school-age child on November 7, 2023, the date application was filed, and is currently a school-age child (20 CFR 416.926a(g)(2)).
>
> 2. The claimant has not engaged in substantial gainful activity since November 7, 2023, the

application date (20 CFR 416.924(b) and 416.971 *et seq*.).

3. The claimant has the following severe impairments: autism spectrum disorder, low vision, and attention deficit hyperactivity disorder (ADHD), combined type (20 CFR 416.924(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.924, 416.925 and 416.926).

5. The claimant does not have an impairment or combination of impairments that functionally equals the severity of the listings (20 CFR 416.924(d) and 416.926a).

6. The undersigned finds that the claimant has not been disabled, as defined in the Social Security Act, since November 7, 2023, the date the application was filed (20 CFR 416.924(a)).

Tr. 18–23.

**Standard for Disability**

A child claimant, under the age of 18, is entitled to receive Supplemental Security Income benefits if the claimant establishes the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as "a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C).

9

An ALJ is required to follow a three-step sequential analysis to make a disability determination for a child claimant:

> 1.    Is the claimant engaged in any substantial gainful activity? If so, the claimant is not disabled.
>
> 2.    Does the claimant have a medically determinable impairment that is "severe"? If not, the claimant is not disabled.
>
> 3.    Does the claimant's impairment meet, medically equal, or functionally equal one of the listed impairments and meet the duration requirement? If so, the claimant is disabled. If not, the claimant is not disabled.

20 C.F.R. § 416.924(a)–(d).

To determine under step three whether a claimant's impairment functionally equals a listing, the ALJ considers six domains of functioning: (1) "[a]cquiring and using information"; (2) "[a]ttending and completing tasks"; (3) "[i]nteracting and relating with others"; (4) "[m]oving about and manipulating objects"; (5) "[c]aring for yourself"; and (6) "[h]ealth and physical well-being." 20 C.F.R. § 416.926a(b)(1)(i)–(vi); *see Smoot v. Comm'r of Soc. Sec.*, No. 5:22-cv-1235, 2023 WL 1413097, at *12 (N.D. Ohio Jan. 31, 2023); *see also M.G. v. Comm'r of Soc. Sec.*, 861 F. Supp. 2d 846, 855 (E.D. Mich. 2012) (citing 20 C.F.R. § 416.926a). To establish a functional impairment equal to the listings, the claimant must show an "extreme" limitation in one domain or a "marked" impairment in more than one domain. 20 C.F.R. § 416.926a(d). As in any Social Security disability case, the child claimant has the burden of proof at steps one

10

through three. 20 C.F.R. § 416.912(a); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001).

**Standard of review**

A reviewing court must affirm the Commissioner's conclusions unless it determines "that the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Jordan*, 548 F.3d at 422. "'[S]ubstantial evidence' is a 'term of art'" under which "a court … asks whether" the "existing administrative record … contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted). The substantial evidence standard "is not high." *Id*. Substantial evidence "is 'more than a mere scintilla'" but it "means only[] 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*. (citations omitted). The Commissioner's "findings … as to any fact if supported by substantial evidence [are] conclusive." 42 U.S.C. § 405(g); *Biestek*, 139 S. Ct. at 1152.

A court may "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). Even if substantial evidence or a preponderance of the evidence supports a claimant's position, a reviewing court cannot overturn the Commissioner's decision "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). This is so because there is a "zone of choice within which"

11

the Commissioner can act, without fear of judicial "interference." *Lindsley v.*
*Comm'r of Soc. Sec.*, 560 F.3d 601, 605 (6th Cir. 2009) (quoting *Felisky v.*
*Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994)).

**Discussion**

Adams's sole assignment of error is that the ALJ "failed to perform an
adequate assessment of whether [J.L.A.'s] autism spectrum disorder meets or
medically equals listing 112.10." Doc. 8, at 8.

To meet or equal Listing 112.10, *Autism spectrum disorder*, a claimant
must satisfy both paragraphs A and B, as follows:

> A. Medical documentation of both of the following:
> 1. Qualitative deficits in verbal communication,
> nonverbal communication, and social interaction;
> and
> 2. Significantly restricted, repetitive patterns of
> behavior, interests, or activities.
>
> AND
>
> B. Extreme limitation of one, or marked limitation
> of two, of the following areas of mental functioning
> (see 112.00F):
> 1. Understand, remember, or apply information (see
> 112.00E1).
> 2. Interact with others (see 112.00E2).
> 3. Concentrate, persist, or maintain pace (see
> 112.00E3).
> 4. Adapt or manage oneself (see 112.00E4).

20 C.F.R. § Pt. 404, Subpt. P, App. 1, Listing 112.10. If a child claimant doesn't
satisfy these requirements, then the ALJ will assess whether the claimant
"functionally equal[s]" any listing by considering all of the claimant's

12

functional impairments "in terms of six domains." *See* 20 C.F.R. § 416.926a(a),(b)(1).

In his decision, the ALJ at step three found that J.L.A.'s impairments did not meet or medically equal the severity of a listed impairment. Tr. 18. The ALJ explained:

> The record does not show visual efficiency percentage of 20 or less after best correction or visual impairment value of 1.00 or greater after best correction to meet the criteria of Listing 102.04 [Loss of Visual Efficiency, or Visual Impairment].
>
> Claimant does not have an autistic or pervasive developmental disorder with qualitative deficits that meets or equals the criteria of Listing 112.10 [Autism Spectrum Disorder]. Claimant has a diagnosis of autism spectrum disorder. Claimant is mildly limited in the ability to understand, remember or apply Information; mildly limited in the ability to interact with others; moderately limited in the ability to maintain concentration, persistence or pace; and moderately limited in the ability to adapt or manage oneself.

Tr. 19.

Then the ALJ proceeded to determine "functional equivalence," and found that J.L.A. did not have an impairment or combination of impairments that "functionally equal[ed]" the severity of a listed impairment. Tr. 19; *see* 20 C.F.R. § 416.926a. At this step, the ALJ found that J.L.A. had:

> • less than a marked limitation in acquiring and using information;
> • less than a marked limitation in attending and completing tasks;
> • less than a marked limitation in interacting and relating with others;

13

- less than a marked limitation in moving about and manipulating objects;
- less than a marked limitation in the ability to care for himself; and
- a marked limitation in health and physical well-being.

Tr. 20. In doing so, the ALJ summarized Adams's hearing testimony, Tr. 20–21, discussed consultative examiner Dr. Wang's report, Tr. 21, and spent almost two pages explaining his findings for the six domains of functioning listed above. Tr. 21–22.

Adams does not challenge the ALJ's *functional equivalency* evaluation about the six domains of functioning. Tr. 21–22. Rather, she argues that the ALJ's "meets and medically equals analysis" in the four areas of functioning, Tr. 19, "is insufficient" and "conclusory, pointing to no evidence to support the limitations described therein," Doc. 8, at 13. Moreover, Adams asserts, the ALJ's "more thorough" *functional equivalency* evaluation can't substitute for the *meet-or-equals* evaluation. *Id.* She submits that "[t]his Court has held that the analysis regarding whether a claimant's impairment(s) meets or medically equals a listed impairment is a *separate analysis* than the analysis of whether the impairment functionally equals a listed impairment." *Id.* at 9 (citing *Dodson v. Calvin*, 3:15-cv-0497, 2016 WL 541471 at *17 (N.D. Ohio Feb. 11, 2016)). Adams cites four other unpublished district court cases within the Sixth Circuit in support of her argument. *Id.* at 10 (listing cases, discussed below). She also relies on *Reynolds v. Commissioner of Social Security*, 424 F. App'x 411, 415 (6th Cir. 2011). *Id.*

14

The Commissioner argues that, while the ALJ's *meet-or-equal* determination was "brief," "the Sixth Circuit has excused a lack of articulation at the listings step of the sequential evaluation process where the decision as a whole supports the conclusion." Doc. 9, at 6–7 (citing *Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006), and *Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 366 (6th Cir. 2014)). The Commissioner contends that "in the remainder of the decision" the ALJ "weighed the evidence and cited a sufficient amount of evidence to support the finding that [J.L.A.'s] impairment did not meet or equal Listing 112.10." *Id.* at 7.

After review of all of the unpublished cases that both parties cite, and the ALJ's entire decision, I recommend that the Court find that the ALJ's *meet-or-equal* articulation in this case was sufficient.

*A. Review of the Sixth Circuit's unpublished cases that the parties cite*

First up are the Sixth Circuit cases. In *Reynolds*, the ALJ found at step two that the claimant had a severe mental impairment and a severe physical impairment of "back pain." 424 F. App'x at 415. At step three, the ALJ stated that Reynolds did not "meet sections 1.00," which cover musculoskeletal listings, "or 12.00," which cover psychological listings. *Id.* The ALJ then "conducted a thorough … full-page assessment" of Reynold's mental impairment under Listing 12.04, but provided "no analysis whatsoever" regarding Reynold's back pain. *Id.* The Court concluded that by failing to discuss Reynold's back impairment at step three, the ALJ "skipped an entire

15

step of the necessary analysis. He was required to assess whether Reynolds met or equaled a Listed Impairment (such as [Listing 1.04, *Disorders of the spine*]), but did not do so." *Id.* at 416.

Here, the ALJ cited the specific listings he considered. Tr. 19 (considering 102.04 and 112.10). With regard to Listing 112.10, the ALJ commented that J.L.A. was diagnosed with autism spectrum disorder. Tr. 19. The ALJ stated to what degree he found J.L.A. limited in each of the four areas of functioning. Tr. 19. The ALJ did not, as in *Reynolds*, provide "no analysis whatsoever" regarding whether J.L.A.'s autism met or equaled a listing. So *Reynolds* is not on point.

In *Bledsoe*, the Court rejected the claimant's argument that the ALJ "should spell out the weight he gave to each factor in his step three analysis." 165 F. App'x at 411. The Court stated that there is no "heightened articulation standard" at step three "where the ALJ's findings are supported by substantial evidence [discussed elsewhere in the ALJ's decision]." *Id.* The Court relied on the ALJ's five-page, step-two discussion of Bledsoe's severe and non-severe impairments to find support for the ALJ's step-three finding, and commented that the ALJ didn't need to "spell out every fact a second time under the step three analysis." *Id.* But while the Court found that the ALJ "did not err by not spelling out every consideration that went into the step three determination," *id.*, it's not clear from the opinion how much the ALJ *did* "spell out" what he considered in his step three analysis. So while *Bledsoe* shows that a court can

16

look to other areas of the decision to find what the ALJ considered for a step-three finding, it's doesn't explain what kind of minimal articulation at step three would be acceptable.

Finally, in *Forrest*, the ALJ at step three "stated only that '[t]he record does not contain any clinical findings or diagnostic laboratory evidence of an impairment or combination of impairments that would meet the requirements for any listed physical impairment.'" 591 F. App'x at 364. The Court rejected the claimant's argument that the ALJ's "sparse analysis precludes meaningful judicial review of his step-three findings," holding that "the ALJ made sufficient factual findings elsewhere in his decision to support his conclusion at step three." *Id.* at 366 (citing *Bledsoe*).

None of these cases are child disability cases in which the ALJ evaluated the *meet-or-equal* and *functional equivalency* steps. Nevertheless, they provide guidance for evaluating the ALJ's step three articulation. While *Reynolds* held that an ALJ errs when she fails to provide any step-three analysis at all, *Bledsoe* and *Forrest* held that minimum articulation at step three suffices when other portions of the ALJ's decision supply sufficient explanation.

In comparing these three cases, the facts in Adams's case are closer to the facts in *Bledsoe* and *Forrest*, rather than *Reynolds*. This is so because here, the ALJ cited Listing 112.10; provided some articulation when he stated his finding for each of the four paragraph B criteria; and provided sufficient factual

17

findings elsewhere in his decision to support his Listing 112.10 determination.[5] These cases therefore counsel that the Court should affirm the ALJ's decision.

*B. Review of the unpublished district court cases that Adams cites*

Next up are the five district court cases that Adams relies on. Doc. 8, at 10 (listing cases, discussed below). These are childhood disability cases in which the ALJ evaluated the *meet-or-equal* and *functional equivalency* steps. All but one of them reversed the ALJ's decision, finding that the ALJ's *meet-or-equal* analysis was insufficient, and holding that the ALJ's *functional equivalency* evaluation could not provide the necessary findings to support the *meet-or-equal* determination.

In *Layton ex rel. B.O. v. Colvin*, the ALJ's *meet-or-equal* discussion consisted only of this statement: "[the claimant] 'does not have an impairment or combination of impairments that meets or medically equals the listings.'" No. 12-cv-12934, 2013 WL 5372798, at *8 (E.D. Mich. Sept. 25, 2013). The court wrote that "[a] bare conclusion that the claimant did not meet or equal any listing, without even identifying the relevant listings that were considered, does not permit this Court to perform meaningful judicial review." *Id*. And the ALJ's *functional equivalency* discussion, the court found, "does not 'stand in'" for the *meet-or-equal* analysis because the ALJ "is required to evaluate and

---

[5]   Adams only presents a procedural issue—whether the ALJ's *functional equivalency* analysis can supply the reasoning for the *meet-and-equal* determination. She does not allege that the ALJ's *functional equivalency* analysis is substantively faulty.

make separate determinations on whether Claimant's impairments meet, medically equal, or functionally equal the listings." *Id*. And in *Alworden ex rel. K.L.A. v. Commissioner of Social Security*, the ALJ didn't say what listings he considered—he only said that the evidence did not "meet the specific criteria of any of the Listings." No. 1:09-cv-1040, 2011 WL 1118611, at *6 (W.D. Mich. Jan. 24, 2011), *report and recommendation*, 2011 WL 1102848 (W.D. Mich. Mar. 25, 2011).

*Layton* and *Alworden* are similar to *Reynolds* because in those cases the ALJs didn't identify what listings they considered and they offered no explanation at all. And *Layton* and *Alworden* are not analogous to Adams's case because, here, the ALJ identified the listings he considered and said how he rated J.L.A.'s limitations in the four areas of the paragraph B criteria. Tr. 19. These cases therefore do not show that the ALJ's decision here should be reversed.

The other three cases Adams cites are closer calls. In *Dodson*, the ALJ at the *meet-or-equal* step said that he considered Listing 112.11; found that the evidence failed to show that the claimant's impairments "establish[ed] the requisite criteria set forth in paragraph B"; recited the four functional paragraph B criteria; and wrote that "the claimant's difficulties in these areas do not rise to the 'marked' level, for the reasons set forth below [in the *functional equivalency* discussion]." 2016 WL 541471, at *14. The ALJ then at length evaluated the *functional equivalency* domains. *Id*. at *15. The court

found that the ALJ erred by failing to separately evaluate the *meet-or-equal* and *functional equivalency* issues, and that the findings in the latter could not "substitute" for findings in the former. *Id*. at 16–17.

Here, unlike in *Dodson*, the ALJ did not incorporate by reference his *functional equivalency* findings to support his *meet-or-equal* findings. Instead, the ALJ separately evaluated the *meet-or-equal* and *functional equivalence* criteria. Tr. 19–22 (the ALJ finding that J.L.A. had "mild" or "moderate" limitations in the four areas of functioning in paragraph B, and then finding that J.L.A. had "less than marked" limitations and a "marked" limitation in the six domains of functioning.).

*Ray ex rel. A.K.D. v. Colvin*, No. 3:13-cv-1684, 2014 WL 4365109 (N.D. Ohio Sept. 2, 2014), which Adams also cites, Doc. 8, at 10, is not directly on point. In *Ray*, the ALJ found that the claimant's foot impairment did not meet Listing 101.03. 2014 WL 4365109, at *8. In making this finding, the ALJ credited teacher evaluations over a doctor's statement. *Id*. The claimant argued, and the court agreed, that the ALJ's reliance on teacher evaluations rather than the doctor's note violated the treating physician rule.[6] *Id*. at 8–9. The claimant then argued that, without the teacher evaluations to support the ALJ's *meet-or-equal* explanation, the claimant had shown that he met Listing 101.03. *Id*. at 9. The court agreed that, without the teacher evaluations, the

---

[6]     The "treating physician rule," which is no longer in effect, required ALJs to give controlling weight to treating physician opinions unless certain criteria were met. *See* 20 C.F.R. § 416.927; 20 C.F.R. § 416.920c.

ALJ's explanation did not sufficiently show how the ALJ determined that the claimant did not meet Listing 101.03. The court also commented that the ALJ "disregarded two compelling pieces of evidence," and stated that the ALJ's "functional equivalence analysis in this case does not provide an adequate substitute for the Step Three meets or equals analysis." *Id.* at \*11–12.

Here, the ALJ's analysis is not tainted by reliance on evidence in violation of the treating physician rule and Adams has not alleged that the ALJ disregarded compelling evidence.

Finally, Adams cites *Campbell ex rel. M.B. v. Commissioner of Social Security*, No. 1:13-cv-00329, 2014 WL 51334 (N.D. Ohio Jan. 6, 2014). Doc. 8, at 10. While Adams accurately quotes *Campbell, id.* (quoting *Campbell*, 2014 WL 51334, at \*7) ("the mere existence of a functional equivalence discussion does not, of itself, substitute for the direct analysis of whether a listing has been met."), the court in *Campbell* ultimately rejected the claimant's argument and affirmed the Commissioner's decision. In *Campbell*, the ALJ "explained his reasons why [the claimant] did not meet the listing at § 112.11 in a brief, single observation that [the claimant] 'does not experience marked limitations in functioning while following a prescribed course of treatment.'" 2014 WL 51334, at \*5. The court considered other portions of the ALJ's decision, *including the ALJ's functional-equivalency findings*, and determined that, "[r]ead together," "the ALJ's own findings articulate a sufficient basis for

concluding that [the claimant] did not meet this portion of the listing." *Id*. at *6–7.

These district court cases within the Sixth District are not outliers—it appears that other district courts in other circuits have wrestled with this issue. *See, e.g., Ferrell ex rel. A.I. v. Kijakazi*, No. 1:21-cv-126, 2022 U.S. Dist. LEXIS 238315, at *16–27 (M.D.N.C. Nov. 21, 2022) (collecting cases from district courts around the country that have split on the issue of whether a *functional equivalency* analysis can provide necessary articulation for a cursory *meet-or-equal analysis* and concluding that it can, relying on unpublished Fourth Circuit cases which held that an ALJ's cursory explanation at step three is not error when elsewhere in the decision the ALJ supplies the necessary reasoning), *report and recommendation adopted*, 2023 U.S. Dist. LEXIS 26912 (M.D.N.C. Feb. 16, 2023).

The Sixth Circuit cases provide the more persuasive framework to follow here.[7] Adams maintains that the *meet-or-equal* analysis is "separate" from the *functional equivalency* analysis. Doc 8, at 9. But that is true in all disability cases—the ALJ must evaluate child and adult disability cases by going through sequential steps, each with its own separate standard. *Bledsoe* and *Forrest* didn't say that the ALJ's findings elsewhere in the decision to support a step three finding had to come from any particular step of the decision. *Bledsoe* and

---

[7]     The Sixth Circuit's unpublished decisions are not binding precedent. *See In re Blasingame*, 986 F.3d 633, 637 n.2 (6th Cir. 2021).

22

*Forrest* didn't say that any area of the decision would be off-limits. And Adams hasn't explained why the Court should carve out an exception here, and forbid this Court from looking at the ALJ's discussion of evidence in his *functional equivalency* analysis to determine whether it could support the ALJ's *meet-or-equal* finding. The result may be different in a case in which, for instance, the ALJ expressly said that his *functional equivalency* analysis was meant to stand in for his *meet-or-equal* analysis. *See, e.g., Dodson*, 2016 WL 541471, at \*14, 16 ("the ALJ appears to treat the meets/equals analysis as being duplicative of, or encompassed by, the decision's functional equivalence discussion."). But that is not what the ALJ did here.

Accordingly, and as described below, the ALJ's decision as a whole contains adequate findings to support the ALJ's *meet-or-equal* determination, and the Court may consider these findings.

*C. Read as a whole, the ALJ's meet-or-equal determination is supported by substantial evidence*

Reading the decision as a whole, *see Bledsoe*, 165 F. App'x at 411, the ALJ's findings are sufficient to support his conclusion that J.L.A.'s limitations did not meet or equal Listing 112.10.

The ALJ discussed consultative examiner Dr. Wang's opinion. Tr. 21. While it is true that this discussion is located in the *functional equivalency* section, the ALJ cited Dr. Wang's observations that directly speak to the four areas of functioning in the *meet-or equal* portion of the decision. For instance, the ALJ commented that during Dr. Wang's exam, J.L.A. "did not display

23

issues with understanding or remembering simple questions during the clinical interactions." Tr. 21, *see* Tr. 497 (Dr. Wang stating that J.L.A. "did not display issues with understanding or remembering simple questions during the clinical interactions across the evaluation. He responded to simple questions without difficulty."). This supports the ALJ's finding that J.L.A. is "mildly limited" in his ability to understand, remember, or apply information. Tr. 19.

The ALJ commented that Dr. Wang "did not observe significant impairment in attention and concentration during the clinical interactions across the evaluation." Tr. 21, Tr. 497 (Dr. Wang stating that "[s]ignificant impairment in attention and concentration was not observed during the clinical interactions across the evaluation."). The ALJ also commented that an intervention specialist reported that J.L.A. was often "sleepy in school" and "struggle[d] to attend to instructions and tasks." Tr. 22, Tr. 444. This supports the ALJ's finding that J.L.A. is "moderately limited"[8] in his ability to maintain concentration, persistence, or pace. Tr. 19. The ALJ observed that Dr. Wang described J.L.A. as "pleasant" and "cooperative" during the exam, and that he and his mother told Dr. Wang that he got along well with teachers and that his

---

8      The regulations explain that a "moderate" limitation is less than a "marked" limitation, and that a *marked* limitation "interferes seriously with [a child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). The ALJ's conclusion that J.L.A. has a "moderate" limitation in the ability to maintain, concentration, persistence, or pace is consistent with Dr. Wang's observation that J.L.A. exhibited no "significant impairment in attention and concentration." Tr. 497.

ability to get along with peers was improving. Tr. 21, Tr. 497. This supports the ALJ's finding that J.L.A. is "mildly limited" in his ability to interact with others. Tr. 19.

Finally, the ALJ wrote that J.L.A. can dress himself if his parents put his clothes out. Tr. 22. He can independently eat, brush his teeth, and go to the toilet, although he doesn't like to wipe himself and he doesn't bathe himself. Tr. 22, 498. This supports the ALJ's finding that J.L.A. is "moderately limited" in his ability to adapt or manage himself. Tr. 19.

### D. Adams's additional arguments are unavailing

Adams's additional arguments are unavailing. First, she argues that the ALJ's *meet-or-equal* ratings "conflict[]" with the ALJ's *functional equivalency* ratings. Doc. 8, at 15. Adams contends that the ALJ's finding that J.L.A. had "marked" limitations in health and physical wellbeing due in part to his "struggles to attend to instructions and tasks," Tr. 22, conflicts with the ALJ's finding that J.L.A. had "moderate" limitations in the ability to maintain concentration, persistence, and pace, Tr. 19. Doc. 8, at 15. But the ALJ's finding that J.L.A. had *marked* limitations in his health and physical wellbeing also relied, in large part, on J.L.A.'s vision impairment. Tr. 22. So these findings are not in conflict. If anything, the ALJ's findings underscore the fact that the ALJ separately considered J.L.A.'s limitations at the *meet-or-equal* step and the *functional equivalency* step.

Next, Adams submits that the ALJ should have also evaluated J.L.A.'s vision impairment when he evaluated J.L.A.'s autism at the *meet-or-equal* step. Doc. 8, at 15–16. But the ALJ did so. Tr. 19 (ALJ finding that "[t]he record does not show visual efficiency percentage of 20 or less after best correction or visual impairment value of 1.00 or greater after best correction to meet the criteria of Listing 102.04.").

Adams argues that there is evidence in the record that would support a finding that J.L.A. was more limited in interacting with others. Doc. 8, at 17 (citing J.L.A.'s "IEP notes"). But Adams failed to present evidence of J.L.A.'s IEP notes in the *Facts* section of his brief, as the Court's Initial Order requires, *see* Doc. 5,[9] so the Court need not consider her argument. In any event, the ALJ found that J.L.A.'s ability to get along with his peers was improving, Tr. 21–22, a finding that Adam does not challenge.

In her reply brief, Adams argues that the ALJ erred because he failed to "address the 'paragraph A' requirements [of Listing 112.10] *at all*." Doc. 10, at 3, 6. She didn't raise this argument in her opening brief, so it is forfeited. *See Island Creek Coal Co. v. Wilkerson*, 910 F.3d 254, 256 (6th Cir. 2018). In any event, a claimant must meet both paragraphs A and B criteria. 20 C.F.R. § Pt. 404, Subpt. P, App. 1, Listing 112.10. Because the ALJ found that J.L.A's

---

[9] "All facts relevant to the legal issues and discussion must be set forth in the *Facts* section." Doc. 5, at 3. "The Court will not consider facts referenced in a party's argument unless those facts have been set out in the *Facts* section of the party's brief." *Id*. at 4.

26

diagnosed autism spectrum disorder didn't satisfy the paragraph B criteria, Tr. 19, he wasn't required to discuss the paragraph A criteria. *See Bowman v. Comm'r of Soc. Sec.*, 683 F. App'x 367, 372 (6th Cir. 2017).

**Conclusion**

For the reasons explained above, I recommend that the Commissioner's decision be affirmed.

Dated: July 20, 2026

/s/ James E. Grimes Jr.
James E. Grimes Jr.
U.S. Magistrate Judge

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F.3d 520, 530–31 (6th Cir. 2019).